THE STATE, EX REL. LATTANNER, DEPUTY SUPER-INTENDENT OF BANKS, *v.* HILLS.

*Negotiable instruments — Defenses — Want or failure of considera-tion — Note given to enable bank to continue business — Duress — Threats of prosecution — One issue properly submitted to jury — General verdict returned for prevailing party — Errors in submitting other issues, disregarded, when.*

1. Where a note is executed to a bank for the purpose of meeting the requirement of the state superintendent of banks that de-ficiency of the assets of said bank be made good, and for the purpose and with the result of enabling such bank to continue its business for some period during which debts are created and new depositors acquired, neither the defense of want of consideration nor failure of consideration for such note is available in an action brought to recover thereon by the state superintendent of banks.

2. However, the defense of duress is available to the maker of such note, and if the execution thereof was induced solely by threats of criminal prosecution of a brother of the defendant, made for that purpose by officers of the payee bank and a representative of the state superintendent of banks, and under such circumstances as to constitute a reasonable and adequate cause to control the will of the maker of said note, he may be relieved from payment thereof.

3. Where, upon the issues made by several defenses to a claim sued upon, a general verdict is found for the defendant, it not being disclosed by answers to interrogatories or otherwise upon which issue the verdict was based, and the record disclosing no error touching either the presentation or submission of at least one of such issues, a finding upon which in favor of the prevailing party would justify a general judgment which is rendered, error of the trial court in the submission of other issues will be disregarded.

(No. 14957 — Decided April 25, 1916.)

ERROR to the Court of Appeals of Delaware county.

The original petition filed by the relator, Emery Lattanner, deputy supervisor of banks, was for the recovery of $2,000 and interest upon a promissory note of which the following is a copy:

"$2000.00          GAMBIER, OHIO, *Feb'y 1st, 1910.*

"On or before three years after date I promise to pay The Gambier Banking Co. or order two thousand no/100 dollars for value received, payable at the office of said Co. with interest at 3 per cent. per annum, having deposited as collateral security for the payment of this note as stated on back hereof.

"And I hereby give to the holder hereof full power and authority to sell or collect at my expense all or any part or portion thereof, at any place, either in Ohio or elsewhere, at public or private sale, at holder's option, on the non-performance of the above promise and at any time thereafter, and without advertising the same or

otherwise giving to me any notice. In case of public sale, the holder may purchase without being liable to account for more than the net proceeds of such sale.

"And it is also agreed that the holder or assigns may also hold said property as security for, or out of the proceeds thereof may pay any other claims the holder may have against me while said property or the proceeds thereof remain in holder's hands.

"Collateral Note No. 6949    FRANK A. HILLS."

On the back of the note are the following credits and indorsements:

"For the protection of the maker of this note the Gambier Banking Company deposits the one-twentieth part of the following securities:—9988 shares Pref'd—32488 shares common stock of the Cashier Mining & Milling Co.—1950 shrs.; Pref'd stock of the Oppenheimer Institute. — Equity in 1300 acre farm in Pike county, Ohio, and $10,000 policy No. 57612 in the Berkshire Life Insurance Co. In the event that these securities realize more than the face value of this note and interest due, the balance shall be the property of the said Banking Co.

"Int. Pd. to Feb. 1st, 1911.
"Int. Pd. to Feb. 1st, 1912—$60.00."

By an amendment to the petition it is averred that the collateral mentioned on the back of the note, and which came into plaintiff's possession,

was sold for the highest price obtainable, the total amount realized therefrom being $5,774.34, which entitles plaintiff to a credit on the note in the sum of $288.87.

The defendant by his amended answer, after admitting the execution of the note sued upon and denying other averments of the petition, set up further defenses, in substance as follows: Second, that there was no consideration for the execution of said note; third, that it was executed for the purpose of being held by said bank as a pretended asset to meet the requirement of the state superintendent of banks that the assets of said bank be replenished, that it was expressly understood and agreed that there would be no obligation upon the defendant to pay said note, and that the only purpose on the part of the superintendent of banks was to lead the creditors of said bank and the general public to believe that said note was a valuable asset of the bank; fourth, that said note was signed under duress, the defendant being induced to execute the same by threats of officers of said bank and the state superintendent of banks that his brother, a former official of the bank, would be criminally prosecuted unless the defendant executed said note; fifth, that said note was paid by subsequent cash contribution to the assets of said bank by the brother and brother-in-law of the defendant, and that it was understood and agreed that said payment constituted a settlement of said note as well as all notes theretofore given by said brother and brother-in-law of the defendant; sixth, that there was a failure of consideration for said

note in that said bank was not permitted to continue in business for a period of three years, and criminal prosecution was caused to be instituted against defendant's brother, contrary to an agreement made and in consideration of which said note was executed.

The court of common pleas having overruled a demurrer to the answer and each defense set forth therein, the plaintiff filed a reply which, in addition to admitting certain allegations and denying others, averred that by reason of the execution of the note said bank was permitted to continue until May 16, 1911, and that after the delivery of the note a large amount of deposits were received from persons who are now unpaid creditors of said banking company; that said note was listed among the assets of said banking company and that the defendant is estopped to deny the validity thereof or his liability thereon as against plaintiff.

The case was submitted to a jury, which returned a general verdict in favor of the defendant, upon which the court of common pleas rendered judgment, which judgment was affirmed by the court of appeals. Error is now prosecuted to this court and a reversal sought.

*Mr. Edward T. Powell* and *Mr. John M. Elliott,* for plaintiff in error.

*Messrs. Marriott, Freshwater & Wickham,* for defendant in error.

MATTHIAS, J. The substance of the pleadings heretofore stated sufficiently shows the issues upon

which the case went to trial. The controlling facts may readily be gleaned from the record, and there is little conflict or dispute in the evidence.

Harry N. Hills, a brother of the defendant in this action, in the year 1900 opened a private bank in Gambier, Ohio, known as the Gambier Savings Bank, and as the president and general manager continued such business about five years. During that period he had borrowed large sums of money from the bank, executing his individual notes and pledging as collateral security therefor his equity in a Pike county farm, shares of stock of The Cashier Mining & Milling Company and The Oppenheimer Institute, and also a life insurance policy upon his own life in the sum of $10,000.

In 1905 The Gambier Banking Company was organized under the laws of the state and took over all the assets of the Gambier Savings Bank. Harry N. Hills then ceased to have any connection with the bank except as a debtor, the successor bank having among its assets the notes of Harry N. Hills and the property heretofore referred to as collateral security.

In the year 1909 the state superintendent of banks ascertained that The Gambier Banking Company had not assets sufficient to meet its obligations and that it was in an unsafe and unsound condition to transact the business for which it was organized. Under authority of Section 730, General Code, he required the bank to make good such deficiency in its assets or suffer its doors to be closed and its business liquidated. In accordance with the requirement of the superintendent of banks the

officers of The Gambier Banking Company raised the sum of $25,000 as additional assets of the bank, included in which was the note for $2,000 executed by the defendant, sued upon herein; a note for $3,500 executed by Frederick P. Hills, another brother, and a note for $2,000 executed by Dr. G. N. Ferris, a brother-in-law of said Harry N. Hills. At the time of the execution of these notes the property which had been assigned to the bank by Harry N. Hills and carried by the bank as assets, was no longer carried as assets of the bank, the notes being substituted therefor, and the property, in accordance with the condition indorsed on the notes, was deposited for the protection of the makers thereof. The bank was permitted to continue its business, but later a demand was made by the superintendent of banks for a further increase in the assets of the bank, in response to which $27,741.69 additional assets were raised in September, 1910, of which $11,741.69 was furnished by Frederick P. Hills and Dr. G. N. Ferris, the defendant Frank A. Hills having refused to contribute anything thereto. The Gambier Banking Company was permitted to continue its business until May, 1911, when the state superintendent of banks found it necessary to take possession thereof for the purpose of liquidation.

Among the assets which came into the hands of the superintendent of banks was the note of the defendant Frank A. Hills, herein sued upon.

At the close of the evidence counsel for plaintiff below, plaintiff in error here, moved the court for a directed verdict against the defendant and also

asked for specific instruction to the jury to disregard the claims made by the several defenses set up in the amended answer. These several motions were overruled, the case was submitted to the jury and a general verdict rendered for the defendant. The action of the court in overruling the motions and also in refusing to instruct the jury upon the issue of estoppel made by the reply, is urged as prejudicial error for which the judgment should be reversed by this court.

In our opinion the trial court might properly have stated to the jury that under the facts disclosed by the record the defenses of want of consideration and failure of consideration were not available to the defendant. However, the court did instruct the jury in substance that if they found from the evidence that at the time the note sued upon was made the bank was in a failing condition, and that the note was executed for the purpose and with the result of enabling the bank to continue its business for some period, that would constitute a sufficient consideration for the note, and that the closing of the bank subsequently because of further impairment of its assets would not constitute a failure of consideration of said note. The jury could not have understood this instruction otherwise than as a direction not to consider the defenses of want of and failure of consideration, set up in the amended answer. By such instruction, therefore, the trial court did in fact sustain the motion of counsel in such respect and properly took from the jury the consideration of the defenses indicated.

It clearly appears from the record that by reason of the execution of the note sued upon, and others which went to make up the required amount of additional assets, the bank was permitted to continue business for a period during which further credits and deposits were acquired, and it would therefore be entirely inequitable to permit the defendant to avert liability on his note on the ground that there was a want of or failure of consideration for said note, nor was the defense available that officers of the bank represented that such note would be treated as assets only for the purpose of misleading the public. No evidence was offered tending to support such claim, and even if it had been it would have been clearly incompetent. *Beecher* v. *Dunlap et al.,* 52 Ohio St., 64.

We are also in accord with the contention of counsel for plaintiff in error that there was no evidence warranting the trial court in submitting to the jury an issue of payment. The defendant pleaded the payment of $11,741.69 into the assets of the bank by Frederick P. Hills and Dr. G. N. Ferris, as a settlement of his note, and that question was submitted to the jury in the face of the statement made by the defendant himself that "he refused to contribute anything to that end" and the undisputed evidence that no reference whatever was made to the note of the defendant, directly or indirectly, either in the conversation at the time such sum was furnished by Frederick P. Hills and Dr. G. N. Ferris or in the receipt then given. Frederick P. Hills, who now claims to have then represented his brother, the defendant, testified

that when that sum was paid no reference whatever was made to the note of the latter, and there is no evidence that the note of the defendant entered into the second transaction.

The trial court might well have followed the admonition of the judge announcing the opinion in the case of *The Cincinnati Gas & Electric Co.* v. *Archdeacon, Admr.,* 80 Ohio St., 27, who there said: "It is subversive of the public interests and promotive of no right of either party to continue a contest before a jury when nothing is involved but the application of the law to a state of facts conclusively established."

However, the defense of duress is available to the defendant, and as against that defense there are no facts warranting the imposition of the principle of estoppel. It clearly appears from the record that neither the defendant nor his brother, Frederick P. Hills, nor his brother-in-law, Dr. G. N. Ferris, prior to or at the time such notes were executed, had any relation whatever to the bank, either as officer, director or stockholder, and that neither of them was a debtor or creditor of the bank, and that neither would be affected financially if the bank were closed by order of the state superintendent of banks and its business liquidated. The only motive apparent, therefore, for the giving of their notes was to avert the threatened criminal prosecution of Harry N. Hills. There is evidence that the president, vice president and cashier of the bank, in their endeavor to procure the execution of these notes, had impressed upon the brother and brother-in-law of Harry N. Hills the very

grave danger confronting him, and on several occasions had said to Frederick P. Hills that if the notes were not furnished the bank would be closed and Harry N. Hills, the brother, would be prosecuted for a criminal offense, and it further appears that additional force was given these statements by clear intimations of similar consequences made by examiners of the banking department.

It further appears from the record that these representations and threats were communicated by Frederick P. Hills to his brother, the defendant, and there is evidence in the record that by means of such threats the defendant was coerced into signing the note, and that but for such representations and threats he would not have executed the note now sued upon. The evidence further indicates that these threats were made under such circumstances as to constitute a reasonable and adequate cause to control the will of the defendant, and that it was intended that they should be communicated to and influence the action of the defendant and induce the execution of the note. It was, therefore, competent to show that they were in fact communicated to the defendant and also to show what, if any, effect they had in inducing the defendant to sign the note. Objection made to such evidence was, therefore, properly overruled. *Fountain* v. *Bigham*, 235 Pa. St., 35; *Henry et al.* v. *State Bank*, 131 Ia., 97, and *Sharon* v. *Gager*, 46 Conn., 186.

In our opinion the evidence disclosed by the record justified the submission of but one issue to the jury—that of duress—and the record does not

disclose any error either in the admission or rejection of evidence touching the issue of duress or in the submission of that issue to the jury.

The verdict returned by the jury is a general verdict. No request for a special verdict was made and no interrogatories submitted; hence it is not disclosed upon which defense the verdict was based. If any presumption is to be indulged it would be that the verdict is not based upon defenses which were not supported by any evidence whatever. The rule laid down in *Sites* v. *Haverstick et al.,* 23 Ohio St., 626, approved and followed in *Beecher* v. *Dunlap et al.,* 52 Ohio St., 64, and *McAllister* v. *Hartzell,* 60 Ohio St., 69, clearly applies and requires an affirmance of the judgment. Applying that rule to the instant case we hold that where, upon the issues made by several defenses to a claim sued upon, a general verdict is found for the defendant, it not being disclosed by answers to interrogatories or otherwise upon which issue the verdict was based, and the record disclosing no error touching either the presentation or submission of at least one of such issues, a finding upon which in favor of the prevailing party would justify a general judgment, which is rendered, error of the trial court in the submission of other issues will be disregarded.

*Judgment affirmed.*

NICHOLS, C. J., JOHNSON, DONAHUE, NEWMAN and JONES, JJ., concur.