Nichols, C. J.
In the trial of an action in the court of common pleas of Hamilton county, Ohio, the last will and testament of John Niemes, theretofore admitted to probate in that county, was by the verdict of a jury held not to be the valid last will and testament of the decedent.
Judgment was entered on the verdict, and in proceedings in error the court of appeals of Hamilton county reversed the judgment and remanded the case for a new trial. Consulting the journal entry of the court of appeals we find that the judg *147 ment of reversal was predicated on two alleged errors:
First. That the court erred in its general instruction to the jury on the subject of undue influence.
Second. That the court erred in the admission of evidence of a number of lay witnesses as to the lack of ability of the testator “to understand and decide large and complicated business propositions.”
The court overruled all other assignments of error, among which was one to the effect that the verdict was contrary to the weight of the evidence; and another to the effect that the court erred in its instruction to the jury that a concurrence of but three-fourths of the membership of that body would be sufficient to return a verdict, the point made being that since a contest of a will in Ohio is what is known as a special statutory proceeding it is not embraced within the language of Section 11455, General Code, providing that in all civil actions a verdict shall be rendered upon the concurrence of three-fourths or more of their number.
In the instant case the verdict of the jury was signed by eleven of the jurors.
Another error assigned by those seeking to maintain the will was that the trial court erred in refusing to give a certain special charge as follows: “To be able to make a will it is not necessary that a person should have power to understand complicated business transactions.”
The case, on motion, was admitted to the supreme court fpr review,
*148 The first proposition upon which the court of appeals hased its reversal of the common pleas court was that it erred in its general charge on the subject of undue influence.
It may be at once conceded that in charging that “If deceived by misrepresentations, or coerced by threats or solicitation or persuasion, or even by mercenary kindness or attention, or influenced by the constant pressure of a dominating or controlling mind which constrained him into executing a will he would not of his own inclination have made, then the jury may find that undue influence has been exerted over the mind of the testator,” the trial judge' brought to the attention of the jury certain species of undue influence about which no evidence whatever had been offered.
The evidence in fact as to undue influence was but meager, sufficient only, it may be said, to have justified the submission of that branch of the case to the jury. A careful search of the record fails to disclose any testimony tending to prove that the testator had been coerced either by threats or solicitations or by mercenary kindness or attentions.
It may then be assumed that the court to that extent incorrectly charged the jury on that issue, although it ought to be said that in all other respects the trial judge’s charge on the subject of undue influence was most admirable.
We are of opinion that no substantial prejudice can be ascribed to such error, and we arrive at this conclusion, first, because the language improperly used was a mere abstraction and to attach to it the importance and significance necessary to justify a *149 reversal of a cause otherwise correctly tried would be going far beyond the proper function of a reviewing court, according to the latter-day conception.
An examination of the record in the case shows conclusively that the issue on which the contestors of the will chiefly relied was the mental unsoundness of the testator. If it be granted that the language is not an abstraction, but given as having direct and concrete application to the case, we are not willing to admit that the error should be charged with the substantiality essential to warrant the setting aside of the verdict of a jury.
We are still further of opinion that if it be granted that the improper inclusion of the language as to the several species of undue influence — which was entirely unsupported by proof — was prejudicial error, the defendant in error cannot take advantage of the error, being precluded therefrom by the doctrine first asserted in Ohio in the case of Sites v. Haverstick et al., 23 Ohio St., 626, and recently reasserted in State, ex rel. Lattanner, v. Hills, 94 Ohio St., 171, 182. This well-known rule of law is that where, upon the issues made by several defenses to a claim sued upon, a general verdict is found for the defendant, it not being disclosed by answers to interrogatories or otherwise upon which issue the verdict was based, and the record disclosing no error touching either the presentation or submission of at least one of such issues, a finding upon which in favor of the prevailing party would justify a general judgment, which *150 is rendered, error of the trial court in the submission of other issues will be disregarded.
The defendant in error seeks to escape from the consequences of this rule of law by asserting that an action to contest the validity of a will is not a civil action, but a special proceeding under the statute, and that there is but one issue, that is, the general issue to be made up on the journal and submitted to the jury as to whether the paper writing is the valid last will and testament of the testator.
The court holds that this special proceeding, so-called, is after all a civil action, clearly made so by the provisions of Sections 11238 and 12079, General Code.
The court also holds that within the general issue so made upon the journal there may be included and generally are included a number of issues special in their nature.
An instrument probated as a will may be set aside for a variety of reasons, and, without pretending to give all such reasons, we would refer to four:
1. That the testator was lacking in mental capacity.
2. That the testator was unduly influenced, as that term is defined by the law.
3. That there was a defective signing or attestation.
4. That the testator was not of legal age.
All of these several questions might be introduced in one given will-contest. It would be the duty of the court to charge separately on each one of the grounds so set forth, and, while all are embraced within the general issue of the validity or *151 invalidity of the instrument, yet they are clearly separate issues of fact or law.
Regarding the second assignment of error ruled upon by the court of appeals in its judgment of reversal, we are confronted with a very singular situation.
The court recites in its journal entry Of reversal that the court of common pleas erred in the admission of evidence in permitting a number of lay witnesses “to testify as to the lack of ability of the testator to understand and decide large and complicated business transactions.’ ” It will be observed that the question so held to be erroneous is quoted with exactness.
A careful and detailed examination of the testimony of each and every witness offered by the plaintiff in error as disclosed by the record fails to show the admission of any such testimony by the trial court. We do find by such examination, at page 51 of the record, that the precise question was asked of Nellie Hobson. The defendant at once objected, the trial judge did not rule on the question but took its competency under advisement. The matter was evidently argued by counsel, and, later, as evidenced by the record at page 86, this same witness was recalled, and this question was thereupon propounded to her: “I will ask you whether in your opinion at that time, he was able to understand large business propositions ?”
To this question objection was made, overruled by the court, and exceptions taken, and the witness was permitted to answer it.
*152 With but slight variations, consisting only in the substitution of the term “important” for “large,” this same question was asked of and answered by all of the witnesses offered by the plaintiff in error..
This court would be justified of course in holding that the court of appeals was in error in reversing a cause for an error assigned, but which the record discloses with absolute certainty did not occur.
That the question actually asked is radically different from the one considered by the court is beyond all question.
It is one thing to understand a matter; it is quite another thing to be able to decide it. One might have the power of understanding and totally lack the power of decision.
One might have the power of understanding and even deciding an important business proposition and yet be incapable of understanding and deciding a business .proposition of a complicated character. A large and important business proposition is not necessarily a complicated one. On the other hand, a small and unimportant business proposition might have angles of great complication.
Considered with reference to the disposition of property, a testator of clouded mentality might have the power of intellectually grasping an uncomplicated will, even though the paper writing might have to do with the disposition of a large estate, and yet be wholly unable to dispose of a small amount of property in a complicated way.
Complicated is defined as consisting. of many parts or particulars not easily severable in thought; *153 hard to understand, explain, etc.; involved; intricate; confused.
Turning our attention to the question really asked, we are not disposed to criticise its competency. It is the law of most every jurisdiction that in a contest of a will proceeding, lay witnesses may be permitted to give their opinions as to the state of mind of the testator. The question usually propounded is: “What is your opinion of the condition of the mind of the testator at the time of the execution of the paper writing? Was it sound or unsound?” or “Was he sane or insane?”
In Runyan v. Price et al., 15 Ohio St., 1, it was held error to permit a lay witness to give opinion as to the capacity of the testator to make a will, the objections set forth by the court being that that was the ultimate question to be decided by the jury, and that the question assumes that the witness knows the capacity required by the law to make a will.
The question asked in the instant case is wholly without the objectionable features of the question condemned in Runyan v. Price, supra.
It is neither the ultimate question to be decided by the jury nor does it assume that the witness knows the capacity requisite for will-making. It would be absurd to the point of ultraism to hold it to be quite proper in a will-contest to permit a lay witness to pass judgment on the mental soundness of the testator, and yet deny him the privilege of giving his opinion as to the ability of the same testator to understand important business affairs.
*154 Either party in proceedings of the character under investigation has the undoubted privilege of presenting to the jury any fact or circumstance having relation to the mental capacity of the testator and the power of his mental faculties.
It is quite common to ask witnesses as to the ability of a testator to transact ordinary business transactions — not that this is the final test. It is in fact a higher test than the law imposes on the testator. -The transaction of the ordinary affairs of life involves a contest of judgment, wisdom and experience, and often demands an exercise of mentality superior to that required in the testamentary disposition of property. In such matters the parties are dealing at arm’s length, as has been aptly expressed.
The fact that a testator could not understand important business transactions or even ordinary business transactions cannot in and of itself justify a verdict setting aside a will, but such inquiries are none the less proper in giving to the jury a picture of the mind under investigation.
If, in a given case, the inquiry of contestant was limited to such character of questioning, the trial court in review would be justified in holding that no evidence has been offered and in directing a verdict accordingly.
In the instant case, however, the record discloses. other testimony, consisting of facts, circumstances and conduct, which if true and unexplained would have a tendency to prove mental incapacity. It was the function of the jury to pass on the sufficiency of this testimony. It has done so — ad *155 versely to the claim of those who sought to sustain the will. The court of appeals, whose duty it was to review the testimony as to its weight, has likewise held on this phase of the case against the claims of the defendant in error. There being some evidence adduced, and the weight having been determined to have been with the plaintiff in error by both tribunals created by law to settle such matters, the inquiry is closed before it reaches the supreme court.
The trial court in the instant case gave a special charge (No. 8) which advised the jury that the test of capacity was not the ability of testator to understand important business affairs, when he said to them: “Testamentary capacity exists when the testator has sufficient mind to understand the nature of the business in which he is engaged, to comprehend generally the nature and extent of the property which constitutes his estate, and which it is his intention to dispose of, and to recollect his family, relatives and those who might be the natural objects of his bounty.”
This charge is open to no serious criticism. It might have been advisable to have subdivided the last clause into two parts, which with a slight change should read as follows:
1. To hold in his mind the names and identity of those who have natural claims- on his bounty.
2. To be able to appreciate his relation to the members of his family.
It is hardly sufficient to say that the testator should hold in his mind or “recollect” the names of his family; he should also be able to identify *156 their relationship to himself, and, carrying the thought further, he should not only be able to hold them in mind and identify their relationship, but he should be able to appreciate the natural claims they might have on his bounty.
It would be only a step in the right direction if testator, with four children, A., B., C. and D., could recall their names and fix in his mind the fact that they were his offspring. He must go farther and realize that by the laws of civilization those united to him by the ties of blood have the first claim upon his consideration.
It is proper to say that in the use of the general term “family” there is no disposition to employ it in any restricted sense. One’s family might be the immediate members of his household, as wife, children, brothers and sisters, or father and mother, and, in the absence of these closer connections, would embrace such of his relations as, under the laws of descent and distribution of Ohio, would be entitled to the next estate of inheritance should he have died intestate.
These rules, of course, like all other general rules of this character, must he exercised with reason. A testator- who could not recall the names and identify the degree of relationship he bore to his immediate family, would be at once open to the suspicion of having a faulty memory. On the contrary, if such testator had no immediate relatives, it might in cases where there exists a large number of connections be an undue burden to charge him with the necessity of possessing such powers of memory as to be able to recall the names of all *157 his next of kin, and to identify in detail their exact relationship even to the remotest degree.
But in any event, be these relations near or remote, the testator is always chargeable with a degree of mental capacity sufficient to appreciate the fact that those united to him by ties of blood have natural claims upon his bounty.
These natural claims can of course be ignored; only however by those who, while fully understanding, yet choose to disregard them.
By the law of Ohio, see Section 10503, General Code, “A person of full age, of sound mind and memory, and not under restraint, who has property, or an interest therein, may give and bequeath it by last will and testament lawfully executed.”
In this respect it may well be doubted if the reasons assigned by this court for its decision in Runyan v. Price, supra, will fully stand the test of reasonable analysis.
The truth is, that the established rule of law permitting lay witnesses to give opinion as to the sanity or insanity of the testator justifies so broad a field of inquiry that it would appear an unwarranted practice to withhold any reasonable inquiry relating to the state of mind of the testator.
The question approved in Runyan v. Price in reality is the ultimate one to be decided by the jury and presupposes that the witness understands what mental unsoundness is.
The question under review there was asked of a lay witness, who, in passing, it may be well to notice, was not a subscribing witness.
*158 It sought the opinion of the witness as to the sanity or insanity of testator, or his capacity to make a will. The court passed with approval that part of the inquiry relating to the sanity or insanity of the testator, but held that portion of the question as to his capacity to make a will improper, for the reason that the question was the ultimate one to be decided by the jury and presupposed a knowledge on the part of the witness of the capacity required by the law to make a will.
It is of course manifest that the capacity under inquiry was entirely mental, and had no reference to his being of legal age or possessing property oían interest therein which he desired to will. The reasoning could well be questioned or at least said to be lacking in wise discrimination, for certainly if the testator is mentally sound he has mental capacity to make a will.
If the reasoning of the court be thought entirely sound as to that part of the question which it held erroneous, then, by the same course of reasoning, the part of the question which called for the witness’s opinion as to the sanity or insanity of the testator should likewise have been held erroneous.
The examiner of the witness evidently understood the two inquiries to be substantially the same, for, as put to the witness, the question was: “State what your opinion was * * * as to the’sanity or insanity of William Runyan, or his capacity to make a will.”
Much stronger reasons could be urged for the establishment of a rule of law entirely forbidding a lay witness to give opinion as to the sanity or in *159 sanity of a testator than it would seem possible to offer for the rule allowing such witness to give such opinion while at the same time prohibiting him from giving an opinion as to testator’s capacity or lack of capacity to make a will.
However this may be, and as long as the rule prevails permitting lay witnesses to give opinion as to the testator’s sanity or insanity, wide latitude may safely be permitted as to both the form and substance of questions which have for their object the presentation to the jury of a replica of the testator’s mind, with all its strength or weakness, and its powers or limitations.
It is further urged by the defendant in error that the trial court erred in refusing to give the following special charge: “To be able to make a will it is not necessary that a person should have power to understand complicated business transactions.”
It is sufficient to say that no such test of capacity was introduced into the case, or claimed by anyone to be the true test, so far as the record discloses. And further, since the court in special charge No. 8, heretofore referred to in this opinion, did give a test of capacity that is substantially correct, no possible prejudice could have been suffered by defendant in error by refusal to give such charge.
There remains but one further question: Was ' there error in the holding that an action in contest of a will is included within the provisions of Section 11455, General Code, permitting verdicts to be returned whenever three-fourths or more of the jury concur?
*160 It is provided in Section 11455, General Code, that in all civil actions a jury shall render a verdict upon the concurrence of three-fourths or more of their number. If therefore an action in contest of a will is a civil action it is included necessarily within the provisions of such section.
That such proceeding is a civil action is not even a debatable matter. The statutes of our state have so denominated it, and that of course is the end of the matter. Section 12079, General Code, provides that “A person interested in a will or codicil admitted to probate in the probate court, or court of common pleas on appeal, may contest its validity by a civil action in the common pleas court of the county in which such probate was had.”
Therefore in view of the provisions of these two sections of the code, it is wholly unnecessary to attempt to differentiate between civil actions and special statutory proceedings.
Whatever the technical distinction may be, it can have no application here.
The judgment of the court of appeals is therefore reversed and that of the common pleas affirmed.

Judgment of court of appeals reversed and that of common pleas affirmed.

Wanamaker, Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.