THE NORFOLK & CHESAPEAKE COAL CO. *v.* JOHN, TRADING AS CITIZENS COAL SYNDICATE.

*Contracts—Parol evidence to determine intent and circumstances—Contract for sale of coal—Parol to explain term "at the mines."*

1. Parol evidence may not be introduced to vary, modify or contradict the provisions of a written contract, where the language is clear and unambiguous, but parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intentions of the parties and properly construing the writing.

2. The parties to an action for breach of a written contract, which they had entered into for the sale of coal, not agreeing as to what the term of the contract "at the mines" really meant, one contending it meant two specific mines and the other that it meant any mines in eastern Kentucky, parol evidence is admissible to ascertain the true intent of the parties.

(Decided March 13, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Messrs. Sibbald & Ducker,* for plaintiff in error.
*Mr. O. S. Bryant* and *Messrs. Rappaport & Rappaport,* for defendant in error.

BUCHWALTER, J. This case comes into this court on error to the Superior Court of Cincinnati. The Norfolk & Chesapeake Coal Company brought an action against William John, trading as the Citizens Coal Syndicate, for damages for a breach of contract entered into on March 8, 1920. The contract was for fifteen cars of Eastern Kentucky run of mine coal, to be delivered on or before June 10, 1920, and with an option to plaintiff, now plaintiff in error, for ten additional cars. Eight cars only were delivered under the contract. Shipping instructions had been given for twenty-five cars of coal.

Plaintiff's claim is that the contract called for Eastern Kentucky run of mine coal, to be procured anywhere in Eastern Kentucky.

William John, defendant, contended that the coal was to come from two certain properties on which he held options, and which were known as the Ida May and the Bamford mines; that he was unable to operate the Ida May mine, as the railroad bridge had been condemned and no cars could be operated over it so as to reach the mine; that although he issued requisitions for cars to the capacity of the mines, only eight were delivered at the Bamford mine up to the time of the expiration of his option on this mine, on May 29; that all of said eight cars were loaded by defendant and delivered to plaintiff under the contract.

Defendant further contends that the last delivery of coal was made to plaintiff on or about the 25th day of May, 1920; that plaintiff failed and

refused to pay for said coal, according to contract, thereby breaching the contract; and that defendant was thereby relieved from further obligation to make deliveries.

The reply of plaintiff sets forth that the coal was sold on credit and not for cash; that it had made full payment to defendant for all coal shipped, and thereafter defendant had agreed to resume shipments under the contract.

The contract in question was evidenced by two letters, the first dated May 6, 1920, from plaintiff in error to defendant in error, the material parts of which are as follows:

"Confirming conversation with you in your office today, you will enter our order for 15 cars of Eastern Kentucky run of mine coal for shipment between now and June 10, with the privilege of 10 additional cars, at a price of $4 per net ton to you, f. o. b. mines."

Defendant's reply, to this letter, dated May 8, 1920, contained the following:

"It was my understanding that I was to enter your order for 15 cars to be delivered on or before June 10, with the privilege of 10 more cars, but this order was taken barring strikes, shortage of cars at the mines, which are not within our power to prevent. In all dealings with us, you will find that we will live up to any contract we have made, barring anything which is beyond our control."

At the hearing, testimony was introduced by defendant tending to prove that the coal was to come from the two mines above stated, and on which defendant had options to purchase. Testimony was also introduced as to the causes which prevented shipment of the balance of the order.

It is urged that this testimony was improperly admitted; also that the court erred in charging the jury to determine from the evidence and the letters whether the coal was to come from the two named mines, or generally, from any mines in Eastern Kentucky; that the court erred in charg-ing the jury that they should determine whether there were causes beyond the control of defendant, which prevented shipments; that the court also erred in its charge on the breach of contract, by failure to pay for the coal on delivery.

The rule is well settled that parol evidence may not be introduced to vary, modify or contradict the provisions of a written contract, where the language is clear and unambiguous, but parol evidence is admissible to show the situation of the parties and the circumstances under which a written instrument was executed, for the purpose of ascertaining the intentions of the parties and properly construing the writing. It is stated in 2 Elliott on Contracts, Section 1621, page 930:

"The rule, that where the parties finally put their contract in writing an independent contemporaneous oral agreement relating to the subject-matter which is inconsistent with the terms of the instrument cannot be given effect to vary or modify its purpose, does not, however, conflict with another well-settled rule to the effect that for the purposes of interpretation and application of the terms of a contract, evidence showing the subject-matter with which the parties dealt, and the object which they sought to accomplish, as shown by the preceding negotiation, is competent, not to vary what has been reduced to writing, but to aid in its construction and to make plain in what sense the

parties used and understood the language they employed."

The same rule is laid down in *Merchants Nat. Bank* v. *Cole*, 83 Ohio St., 50, and cases there cited. See also *DeFriest* v. *Bradley*, 192 Mass., 346.

Where any part of a contract is ambiguous, parol testimony may be introduced to explain it. The intention of the parties must be gathered as of the time of entering into the contract. In the instant case the two parties were not agreed as to what the term "at the mines" really meant; one contending that it meant the two mines named, and the other that it meant any mines in Eastern Kentucky.

It will be noted that the letter of May 8 says that the order was taken "barring strikes, shortage of cars at the mines, which are not within our power to prevent." Shortage of cars at what mines? Hardly all the mines in Eastern Kentucky. The court, therefore, admitted testimony to show what mines had been inspected, what mines were under consideration and discussion at the time of entering into the contract. Such evidence was proper for the purpose of ascertaining the true intent of the parties, and its admission and submission to the jury were not erroneous.

"Where the terms of a contract are ambiguous and their meaning is to be determined by extrinsic evidence which is conflicting, a question is presented for the jury." 13 Corpus Juris, page 785, Section 997.

We do not find that the charge of the court on this issue was erroneous.

Plaintiff in error relied on several cases in sup-

port of the view that this evidence was inadmissible.

The case of *Ormsbee* v. *Machir*, 20 Ohio St., 295, was for eight thousand bushels of corn, was clear in its terms, and called for a definite quantity of a general commodity. Evidence was offered to change the plain terms to a contract for specific corn, in excess of the amount stipulated. This was not similar to the instant case, as it would have varied the plain terms of the contract.

The case of *Johnson* v. *Pierce*, 16 Ohio St., 472, was for the sale of one hundred hogs. To admit testimony to show a different number, out of a particular lot of hogs, was a variation of the contract, hence not admissible.

In both of these cases the parol evidence would contradict the plain wording of the written contract, and not explain the terms thereof, or the intention of the parties.

The provisions of the contract as to what mines were meant being left to the jury for determination, it was then proper under the pleadings to admit evidence as to any causes beyond defendant's control which prevented delivery. For the contract provided "this order was taken barring strikes, shortage of cars at the mines, which are not within our power to prevent. * * * Barring anything which is beyond our control."

The special charge asked by plaintiff, and refused by the court, was properly refused, as it was based on one fact, to-wit, the time of the condemnation of the bridge on the spur track leading to the Ida May mine, whereas, there were other facts to be taken into consideration in determining the defense of failure to deliver as a result of causes beyond defendant's control.

An issue was raised as to the time of payment, and whether or not plaintiff breached the contract by failure to pay when payment was due. This was a matter to be submitted to the jury, as it was one of the questions in issue.

Three defenses were interposed to the plaintiff's cause of action. No interrogatories were submitted, nor was any special verdict found, and we are unable to determine on which of the issues the jury made its finding for defendant, as the verdict was general.

In *State, ex rel. Lattanner,* v. *Hills,* 94 Ohio St., 171, at 172, syllabus 3, the court holds:

"Where, upon the issues made by several defenses to a claim sued upon, a general verdict is found for the defendant, it not being disclosed by answers to interrogatories or otherwise upon which issue the verdict was based, and the record disclosing no error touching either the presentation or submission of at least one of such issues, a finding upon which in favor of the prevailing party would justify a general judgment which is rendered, error of the trial court in the submission of other issues will be disregarded."

So that in applying this rule, the verdict being general, the judgment will stand.

Finding no error prejudicial to the plaintiff in error, the judgment of the Superior Court is affirmed.

*Judgment affirmed.*

CUSHING and HAMILTON, JJ., concur.