### FEDERAL RESERVE BANK OF RICHMOND v. CROTHERS.

(Circuit Court of Appeals, Fourth Circuit. May 16, 1923.)

No. 2050.

**Bills and notes ⊜⇒96—Note to accommodate bank official held given for consideration.**

Where bank president appealed to defendant to give his $6,000 note to aid the president in averting the consequences of an overloan by the bank to the president's own business, and defendant gave such note, not to deceive the bank examiner, but intending that it should be a real asset of the bank until the bank president should be able to take it up, the note was supported by a good consideration, and defendant was estopped to deny liability thereon; it being immaterial that the president used it in substitution of note of another friend given for a like purpose.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action by the Federal Reserve Bank of Richmond against Omar D. Crothers. Judgment for defendant, and plaintiff brings error. Reversed.

W. Thomas Kemp, of Baltimore, Md. (Keech, Deming, Kemp & Carman, of Baltimore, Md., on the brief), for plaintiff in error.

Walter L. Clark, of Baltimore, Md. (Isaac Lobe Straus and Soper, Bowie & Clark, all of Baltimore, Md., on the brief), for defendant in error.

Before TAFT, Circuit Justice, WOODS, Circuit Judge, and GRONER, District Judge.

WOODS, Circuit Judge. In this action on a promissory note for $6,000, given by the defendant to the Second National Bank of Elkton, Md., and rediscounted by the Baltimore Branch of the Federal Reserve Bank of Richmond, the District Court directed a verdict for the defendant for failure of consideration, on the authority of Rankin v. City National Bank, 208 U. S. 541, 28 Sup. Ct. 346, 52 L. Ed. 610.

In 1921 Second National Bank of Elkton, Md., was in good credit and high repute; its apparent capital, surplus and undivided profits aggregating $71,000. William T. Warburton, its president, had a high

reputation in the community for honesty and business capacity. He was the largest stockholder and in absolute control of the bank. In April, 1921, Johnson, the cashier, became alarmed by information imparted to him by other officials that the bank was carrying as assets a number of forged notes. On his insistence Warburton withdrew notes questioned by Johnson as forged to the amount of $141,450, and substituted for them $125,000 bonds of Gilpin Falls electric light plant, owned by Warburton, paying the difference in cash. As required by law, the bank examiner objected to the excess of investment in the bonds. In October, 1921, Warburton appealed to J. W. McAllister to aid him in meeting the objection to the amount of the electric light plant bonds by giving his note for $6,000, payable to the bank at 30 days, to take the place of an equivalent amount of bonds. McAllister gave the note, taking as his protection the personal note of Warburton to him, on the assurance that the electric light plant had been sold and all of the bonds would be taken up in a few days.

Warburton, having failed to sell the electric light plant, did not pay into the bank the money to take up the McAllister note on November 13, 1921, the date of its maturity. On November 17 he asked McAllister to let the note stand for 10 days longer, giving as a reason that the arrangement by which he would get the money for the bonds could not go through before the expiration of that time. McAllister agreed, and at the end of 10 days the McAllister note to the bank and Warburton's note to McAllister were surrendered. Warburton had not sold the electric light plant, but was able to take the McAllister note out of the bank by obtaining from defendant, Crothers, a note for $6,000 on the same representation that he had made to McAllister.

The details of this transaction are given by Crothers. On November 29, 1921, Warburton sought a private interview with him and told him he was expecting the bank examiner, who had objected to $125,000 of bonds of the Gilpin Falls electric light plant owned by the bank as a loan too large for the size of the bank. Warburton asked Crothers for his note for $6,000 at 30 days payable to the bank, to be used to take up some of the bonds to satisfy the examiner. Crothers gave the note for that purpose, and at the same time gave his check on the bank, payable to the order of the bank, at the request of Warburton, for $6,000, on Warburton's statement that it might be necessary to use the check to pay off some of the bonds.

Warburton had the proceeds of the note, $6,000, credited to Crothers on the books of the bank, and on the same day charged against the account the check, which he used for the retirement of the McAllister note for the same amount. At the maturity of Crothers' note, Warburton returned the note to him at his request. The check, having been used to take up the McAllister note, was not returned to Crothers.

On January 14, 1922, two weeks after the return of the first note, Crothers gave the note now in suit for the same amount and the same purpose, namely, to take the place of an equivalent of electric light plant bonds for the satisfaction of the bank examiner. The note was rediscounted at the Baltimore Branch of the Federal Reserve Bank.

After the failure of the Second National Bank of Elkton, and after the commencement of this action, its receiver took up the note.

Evidently Crothers gave the note for the accommodation of Warburton, not of the bank. He had no interest, as a stockholder or otherwise, in the bank, and no reason to be concerned about its affairs. Warburton appealed to him as a distressed bank official for aid in averting the consequences of the flagrant violation of his trust in investing $125,000—$54,000 more than the bank's entire capital, surplus, and profits—in his own business. There is nothing to indicate that Crothers intended to deceive the bank examiner. On the contrary, he seems to have given the note in good faith, intending that it should be a real asset of the bank until Warburton should be able to take it up by the sale of the electric light plant bonds or otherwise. The facts that the note was placed in the bank as an asset, rediscounted by the Federal Reserve Bank, and in all respects appeared as an asset of the bank, evidence that it was counted as an asset in accordance with the intention of the parties.

The argument is pressed that Crothers gave the note on the express understanding that it should be used to take the place of $6,000 of the electric light plant bonds, and that it was actually used in payment or substitution of the McAllister note, and that this was a misappropriation of the note by the bank which saved Crothers from liability. We think the distinction unsound. When Crothers, for Warburton's personal relief, intrusted to him his note, to be placed in the bank and counted by the bank examiner and the bank itself as an asset, he made Warburton his own agent for that purpose; and, the note having served the purpose for which it was intended, Crothers cannot put upon the bank the duty of seeing that Warburton used it for his relief in the precise manner he had agreed. Collateral promises made by Warburton as an inducement to the accommodation to him were his personal promises, in no wise binding on the bank. Public policy requires that the maker be estopped from denying his liability under such circumstances. State ex rel. Lattamer v. Hills, 94 Ohio St. 171, 113 N. E. 1045, L. R. A. 1917B, 684, and note, 688; State Bank v. Kirk, 216 Pa. 452, 65 Atl. 932; Skordal v. Stanton, 89 Minn. 511, 95 N. W. 449; Hurd v. Kelly, 78 N. Y. 588, 34 Am. Rep. 567; Skagit State Bank v. Moody, 86 Wash. 286, 150 Pac. 425, L. R. A. 1916A, 1215, and note 1218; Kennedy v. Young, 136 La. 674, 67 South. 547, L. R. A. 1915D, 935, and note; Lyons v. Benney, 230 Pa. 117, 79 Atl. 250, 34 L. R. A. (N. S.) 105 and note; New England Fire Ins. Co. v. Haynes, 71 Vt. 306, 45 Atl. 221, 76 Am. St. Rep. 772; Arthur v. Brown, 91 S. C. 316, 74 S. E. 652.

It is argued that this view of the law cannot be reconciled with the reasoning and conclusion of the court in Rankin v. City National Bank, 208 U. S. 541, 28 Sup. Ct. 346, 52 L. Ed. 610, where the facts were similar and the transaction was held not binding. But we think there is a distinction. The court says as to the transaction there under review:

"As between the banks no one got any money, and the only benefit of the loan in fact or contemplation was a swindle upon the bank examiner."

Since Warburton and Crothers bona fide intended and agreed that the note should stand as a real asset to be taken into account by the bank examiner until Warburton could take it up from the sale of the electric light plant, there was no fraud; the representative of the bank is merely enforcing according to its terms the obligation of Crothers, which he is estopped from denying. To such a case Rankin v. City National Bank does not apply.

Again, there the court held that the Guthrie Bank itself was a party to the fraud perpetrated for its own benefit, and therefore could not recover a fictitious credit entered in its favor by the City National Bank. Here as we have seen, the note was made, not for the relief of the bank or on its behalf, but for the accommodation of Warburton, to relieve him in part of the consequences of his breach of trust as president of the bank.

The court should have instructed the jury to find for the plaintiff. Reversed.