# HENRY F. NEW ET AL.

## vs.

## GEORGE W. PAGE, RECEIVER.

*Notes Payable to Bank—Given by Directors—Consideration—
Prevention of Closing of Bank.*

Individual notes given by directors and stockholders of a bank, to the bank, in payment for additional stock issued in the name of one of the directors, for the common interest of all, in order to effect the payment of the entire amount of its authorized capital within a year after its organization, as required by law, were supported by a sufficient consideration.

pp. 608, 611

The notes having been given in entire good faith, in order to provide for the continued existence of the corporation in which the makers were interested, though with the expectation that they would be paid out of the proceeds of the stock for which they were given, and there having been no concealment of the transaction on the books of the bank, it could not be contended that they were illegal as part of a part of a plan to mislead the bank commissioner. pp. 608, 611

*Decided January 28th, 1924.*

Appeals from the Superior Court of Baltimore City (GORTER, C. J.).

Actions by George W. Page, Receiver of the Lafayette Bank, against Henry F. New, E. Edgar Thompson and William P. Rausch, respectively. From a judgment for plaintiff in each action, the defendant therein appeals. Affirmed.

The causes were argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Wm. Pinkney Whyte, Jr.*, with whom was *Francis L. Klemm* on the brief, for the appellants.

*Samuel J. Fisher* and *Morton P. Fisher*, for the appellee.

URNER, J., delivered the opinion of the Court.

Three cases have been consolidated for the purposes of this appeal. In the suits as separately tried judgments were recovered by the Receiver of the Lafayette Bank, of Baltimore, upon individual promissory notes for $1,500 each, payable to its order, made by the respective appellants. Upon one of the notes a bank deposit of the maker to the amount of $392.90 had been credited. The appellants were three of the twelve directors of the bank. The notes were given in pursuance of a plan for the directors to finance the subscription and payment for the previously unissued portion of the capital stock of the bank, in order that the entire amount of its authorized capital might be paid within a year after its organization as required by law. (Code, art. 11, sec. 20.) It was necessary that the stock should be sold for twelve dollars per share, so as to yield ten dollars for its par value and two dollars for surplus, and as there were five thousand shares to be subscribed and paid for, the total amount to be received by the bank was $60,000. The twelve directors borrowed $50,000 from the Farmers' and Merchants' Bank of Baltimore, on a promissory note made by them in their individual capacities, with the agreement that $8,000 of the amount should be immediately repaid. The check of the Farmers' and Merchants' Bank to the directors for the $50,000 loaned was deposited in the Lafayette Bank, and after $8,000 had been paid to the former bank, in accordance with the agreement, the balance was applied in partial payment for the 5,000 shares of stock for the purchase of which the money was borrowed. For the payment of the remaining $18,000 of the purchase price of the stock each of the twelve directors gave the Lafayette Bank his promissory note for $1,500. The certificate for the stock was issued

in the name of J. Shorb Neale, one of the directors, and was pledged as collateral security for the note to the Farmers' and Merchants' Bank. An entry on the books of the Lafayette Bank shows that the payment for the stock was credited as having been made by J. Shorb Neale "et al.," and the proof is conclusive that all of the directors participated equally in the subscription. Subsequently the appellee, who is the State Bank Commissioner, became Receiver of the Lafayette Bank under the decree of the Circuit Court of Baltimore City, and the appellants having refused to pay their notes for $1,500 each given to the bank under the circumstances described, the suits which have resulted in the judgments appealed from were instituted.

The only exception in the record was taken in each case because the trial court declined to instruct itself, sitting as as jury, that there was no evidence of any consideration for the promissory note which was the subject of the suit, and that the verdict should be for the defendant.

It is contended on behalf of the appellants that the notes in question were given simply for the accommodation of the Lafayette Bank, in order that its operations might be continued, and with the understanding that they were to be paid out of the proceeds of the future sales of the stock for which they were ostensibly accepted in payment, but for which the appellants and the other directors were not to be regarded as actual subscribers. The transaction is said to have been designed to enable the bank to nominally comply with the law, and the notice of the Bank Commissioner, as to the full subscription and payment for its capital stock. It is argued that the notes sued on were not only without consideration, but were illegal as part of a plan to mislead the Bank Commissioner into the belief that the requirements of the law had been fulfilled.

The appellants' notes to the Lafayette Bank were unquestionably executed with the intention that they should be paid out of the proceeds of subsequent sales of the stock for which

they were given, and with the expectation that they would consequently not have to be paid by the respective makers. But they were delivered to the bank in part payment for shares of stock which it thereupon actually issued, and which represented a substantial interest in the assets of the corporation. There was no concealment in the method by which the subscription and the payment for the stock were accomplished. The nature of the transaction is disclosed by entries on the bank's records. While no formal application for the stock appears to have been signed, and the certificate was issued in the name of only one of the directors, who was president of the bank, the payments and notes received for the shares were credited in an account which indicated that the stock was held for the common interest of those contributing to its purchase. It was proved that the certificate was issued in Mr. Neale's name alone to facilitate transfers as resales of the stock were negotiated. The payment of $42,000 to the bank on account of the stock purchase was certainly not fictitious, and the accompanying delivery of the notes which represented the remaining $18,000 of the purchase price was no less real and effectual. The record wholly fails to show that the appellants gave the notes with any intent to deceive. They acted in evident good faith, in order to provide for the continued existence of the corporation in which they were already interested as stockholders and directors. It was their own as well as the corporate interest which they were thus promoting.

It has been decided in a number of cases that notes or other obligations given by persons financially interested in a bank, to make good a depletion of its capital or assets, are based upon sufficient consideration. Decisions to that effect are cited in a note to *State ex rel. Lattanner* v. *Hills* (94 Ohio St. 171), in L. R. A. 1917 B. 688. The individual interest which the persons assuming the liabilities have in the bank, and the benefit resulting to themselves from the promotion of its financial welfare and the continuance of its operations,

constitute an adequate consideration for the agreement sought to be enforced. 8 *C. J.* 230.

In *Union Bank of Brooklyn* v. *Sullivan,* 214 N. Y. 332, the suit was on a note given to the bank by directors and stockholders to avoid a reduction of its surplus, which would otherwise have been necessary because of the presence of a worthless note of large amount among its assets. In discussing the defense that the note was without consideration, the court said: "They gave their note, and the bank's surplus was not depleted. Thus a contract was made upon a sufficient consideration between the makers and indorsers of the note on the one hand and the bank, a body corporate, on the other. Certainly those who became liable on the note secured a distinct benefit which accrued directly from the contract. Each share of stock which they held represented an aliquot part of the bank's assets, and whatever increased the assets benefited the holders of the stock."

The Supreme Court of Pennsylvania, in *State Bank of Pittsburg* v. *Kirk,* 216 Pa. 452, held that directors of a bank who gave it their notes, on account of an impairment of its capital resulting from bad loans, with the understanding that the notes were to be paid out of the profits of the bank's business, were not entitled, upon the theory of a want of consideration, to resist a recovery on the notes by a receiver subsequently appointed.

In the present case the liabilities of the appellants were contracted, not merely because of their existing interest as stockholders and directors of the bank, but also in consideration of the issuance of five thousand shares of its capital stock for their use and disposition.

If, as the appellants contend, the transaction was unreal so far as any contractual liability to the bank on their part was concerned, it nevertheless accomplished its practical purpose of satisfying the requirements of the law, and of thus authorizing the bank to continue in business. In view of that purpose and result, the principle of estoppel might be sufficient to preclude the present defense. *Lyons* v. *Benney,*

230 Pa. 117, 34 L. R. A. (N. S.) 105, and note; *Federal Reserve Bank* v. *Crothers*, 289 Fed. 777; *Lyons* v. *Westwater*, 181 Fed. 681; *Skagit State Bank* v. *Moody*, 86 **Wash.** 286, L. R. A. 1916 A. 1215, and note. But we rest our decision on the ground that there was a substantial consideration for the appellants' notes to the bank in the actual issuance of the stock for which the notes were given and accepted, and in the pre-existing interest of the appellants as stokholders and directors in the object thereby achieved.

The case of *Rankin* v. *City National Bank*, 208 U. S. 541, which the appellants cite, upon the theory that their notes were not real but only ostensible promises of payment to the bank, is not sufficiently analogous to support their contention. That was an unsuccessful suit by a receiver of an insolvent bank to recover the amount of an apparent deposit, in its name, in another bank, which was the result of a mere bookkeeping device and represented no value received or interest served on behalf of the defendant. There is a wide difference between the issue there decided and the one presented by this record. The other cases cited by the appellants are likewise distinguishable from the case at bar on the controlling facts. It is a real and not a fictitious consideration upon which the notes in suit are based, and the failure to realize the expectation that they would be paid with money produced by resales of the stock for which they were given could not justify us in refusing to give them effect according to their terms.

The court below, in our opinion, was right in declining to direct verdicts for the defendants on the ground that there was no consideration for the notes on which they were sued.

*Judgments affirmed, with costs.*