## UTLEY v. CLARKE et al.

District Court, N. D. New York.

April 3, 1936.

I. Gerald Pliskin, of Syracuse, N. Y. (W. J. & W. E. McClusky, of Syracuse, N. Y., of counsel), for plaintiff.

Frederick G. Whitney, of Pulaski, N. Y. (Albert T. Wilkinson, of Camden, N. Y., of counsel), for defendant receiver.

Lynn W. Smith, of Pulaski, N. Y., for defendant Clarke.

COOPER, District Judge.

This is a motion by the defendant Reasoner to set aside the verdict of the jury in favor of the plaintiff in the sum of $25,000 and dismiss the complaint, and a motion by the plaintiff to set aside the no cause of action verdict by the jury in favor of the defendant Clarke and grant a new trial as to Clarke.

The action was brought by the plaintiff to recover from the defendants the sum of $25,139.25, the market value of certain bonds delivered by plaintiff April 23, 1931.

The plaintiff was a stockholder, vice president, and director of the Pulaski National Bank, and defendant Clarke was the president, director, and the largest stockholder of the bank.

436

The defendant Reasoner is the receiver of the bank appointed by the Comptroller of the Currency of the United States.

On or about the 23d of April, 1931, the defendant Clarke, the president of said bank, informed the plaintiff that he had received instructions from the Comptroller of the Currency that it was necessary to add to the assets of the defendant the sum of $25,000 else the Comptroller would close the bank.

Plaintiff testified that Clarke asked him if he would loan the bank that amount of money and that he consented to do so; that he did not "have the money but that he had bonds"; that Clarke asked him what security he would want, and he (plaintiff) said the bank ought to be good for $25,000; that Clarke said he would give plaintiff his note as collateral security for that amount; that plaintiff went to his safe deposit box in the same bank and took out a number of bonds, and that he (Clarke) selected certain of the bonds and determined their market value from the Wall Street Journal; that Clarke made a deposit slip showing on its face that plaintiff had deposited the sum of $25,139.25, the then market value of the bonds; that Clarke said the transaction would have to be carried out in this way, namely, the deposit of the money in the plaintiff's account and plaintiff's check for $25,000 payable to Clarke; that Clarke thereupon gave plaintiff his personal note due on or before two years after date.

The plaintiff further testified that he pointed out that, though the bonds were depreciated in market value, the interest on the bonds was more than the interest at 6 per cent. on the $25,000, and that Clarke said that the bank would take care of that. The records of the bank show that Clarke deposited Utley's $25,000 check in Clarke's account, and made his own check payable to the bank for the account of surplus and undivided profits; also Clarke wrote the Comptroller of the Currency that he (Clarke) had deposited $25,000 to the said account of surplus and undivided profits.

The minute book of the meetings of the board of directors shows a meeting of the board was held on that very day, viz., April 23, 1931, in which minutes is a purported copy of the letter or statement sent by Clarke to the Comptroller of the Currency stating that Clarke had given his check or deposited $25,000 to the account of surplus and undivided profits. The record of that meeting purports to show that plaintiff was present. But plaintiff testified that he attended no such meeting, if there was one, and had no knowledge of such communication nor that Clarke had deposited plaintiff's check in his (Clarke's) account and given his individual check to the bank.

The report of the bank for the year ending December 31, 1931, signed by the plaintiff as one of three signing directors, apparently shows assets which must have included plaintiff's bonds and liabilities which could not have included any counter obligation due plaintiff.

On or about October 1, 1931, the plaintiff spoke to Clarke about the $750 interest due or about to become due, and Clarke said in substance that the bank would take care of that. A meeting of the board of directors was called at which the plaintiff was present and a resolution passed increasing the president's salary by the sum of $750, and that sum was paid to plaintiff for six months interest. The salary of the president was thereafter apparently reduced to the former amount. Again, on or about April 1, 1932, a similar increase in the president's salary of $750 was voted by the board of directors, and again plaintiff received that sum for six months' interest, and the salary was again reduced to the former amount.

On or about November 1, 1931, President Clarke called the attention of the plaintiff to the fact that the Republic of Columbia bonds were depreciating or had been defaulted, and suggested the exchange of those bonds for a like amount of Agricultural Bank of Columbia bonds which were slightly higher in value and were considered better bonds. Mr. J. O. Wynkoop, the agent of the brokerage house, was present and made the exchange of the bonds. The memorandum made by Mr. Wynkoop, apparently at the direction of President Clarke, showed sale by Utley of $3,000 of one kind of bonds and the purchase of $3,000 of the other kind of bonds, and showed a balance of $52 due. Plaintiff shortly thereafter sent his check for that sum payable to the bank.

On the 8th day of July, 1932, the bank was closed, and the defendant Reasoner named receiver, because of the alleged insolvency of the bank.

Thereafter, in March, 1933, plaintiff duly filed his claim in writing with the receiver, demanding the sum of $25,000.

It is agreed that no part of this was ever paid to the plaintiff.

In 1933 and 1934 the receiver sold all of the said bonds and realized therefrom the sum of $16,016.57.

At the close of plaintiff's case, the defendant Reasoner moved to dismiss the complaint as to him.

It is contended that the court reserved decision thereon, though the court's records show the motion was denied, 'but it may well be that decision was reserved.

At the close of the entire case the defendant receiver again moved for dismissal of the complaint, and decision was reserved. The case was submitted to the jury against both defendants. The jury reported a verdict in favor of plaintiff and against the receiver in the sum of $25,000 and verdict of no cause of action in favor of the defendant Clarke. The defendant receiver moved to set aside the verdict and dismiss the complaint, and plaintiff moved to set aside the verdict in favor of defendant Clarke. Decision on both motions was reserved.

It is clear, that the plaintiff neither claims a trust upon the part of the bank for his benefit nor seeks a preference over depositors or general creditors of the bank, but seeks a judgment to share with them in the assets of the bank.

Defendant receiver Reasoner bases support for his motions to set aside the verdict and dismiss the complaint as to him chiefly on the following grounds:

(1) Plaintiff sold the bonds to the bank and loaned the proceeds to Clarke as an individual and not to the bank.

The argument here is based chiefly on these two grounds, viz.:

(a) The proceeds of the sale were deposited in plaintiff's account in the bank and he gave his check for $25,000 of the proceeds to L. J. Clarke personally and received Clarke's individual note therefor.

(b) Plaintiff is conclusively presumed to know that the books and records of the bank showed this $25,000 as a contribution by Clarke to the surplus and undivided profits account of the bank, and therefore the plaintiff is now estopped from asserting otherwise.

(2) The president of a bank, in the absence of authority of directors, has no power to borrow money for the bank and bind the bank to pay the same.

(3) In any event, the loan was to the bank for the sole purpose of removing impairment of capital, as plaintiff well knew, and plaintiff is estopped from now asserting any claim against the creditors of the bank.

■ On this motion to set aside the verdict, the plaintiff is entitled to the most favorable inferences to be drawn from the evidence.

L. J. Clarke was the president and the dominant factor in the bank. For all practical purposes Clarke managed the bank. All of the directors were members of the Clarke family directly or by marriage, save plaintiff, who, though a vice president, director, and a stockholder, was not a banker or a lawyer, but a businessman and president of a business concern, to which he presumably gave his chief, if not whole, time and attention.

It is reasonably clear that plaintiff intended no loan to L. J. Clarke, the individual as principal debtor. He was told of the danger that the Comptroller might close the bank if $25,000 was not added to the assets of the bank and said he was willing to help.

Plaintiff produced his bonds and delivered them to the president of the bank, for the bank.

He left the procedure by which the assets of the bank could be increased by the needed $25,000 to the president of the bank, and undoubtedly relied on the latter to use the best method.

■ All this the jury necessarily found by the verdict for the plaintiff. The evidence supported such a finding.

When an exchange of securities became necessary in November, 1931, it was not Clarke in whose name it was done, but in that of plaintiff. If plaintiff sold the securities to the bank in April, 1931, and loaned the money to Clarke, as defendant receiver contends, plaintiff had no further interest in the bonds.

And yet the bank, through Clarke, called on the plaintiff to replace $3,000 par value of one bond issue with $3,000 of another issue, and he paid $52 for the difference in value to the bank, the transaction on its face being carried on in his name. The transaction was undoubtedly to increase the value of the securities and prevent impairment of capital.

438

While consistent with another loan by plaintiff of $52 to prevent impairment of assets, it is equally consistent with plaintiff's interest in the bonds themselves.

In fact, the transaction out of which the action arises might better be called a loan by plaintiff of the securities themselves to the bank. The exchange of checks represented no transfer of money, but was merely a subterfuge to simulate a payment to the bank's surplus and undivided profits account of $25,000 in cash by Clarke and purchase of the securities by the bank in that amount.

The two payments of interest to the plaintiff about November, 1931, and May, 1932, by temporarily increasing the salary of the president by the amount of such interest seems a clear recognition by the directors that the bank, not Clarke, was the primary debtor to plaintiff for the money or the securities, though done in a devious way.

In what is here said it is not intended to reflect upon the character of the parties involved. They were mortal men, nor more gifted with clairvoyance than other bankers or men generally. Like many others, they hoped for a return of better days, values, and banking conditions. But "Hope deferred maketh the heart sick," and disaster came at last with broken banks and broken men.

■ As to defendant receiver's contention (1–b) that plaintiff as vice president and director was bound to know all that the books showed as to the transaction, and thus knew that the books showed no obligation of the bank to him, that cannot be accepted as thus stated. Plaintiff was bound to know that he had delivered or sold the bonds to the bank and received a credit to his account of $25,139.25 and delivered a check for $25,000 to Clarke (and in this he is assumed to have relied upon Clarke's statement that such was the way the transaction could best be handled and the $25,-000 added to the assets of the bank). But he cannot be fairly charged with knowledge of the deposit of the check in Clarke's account nor of the giving by Clarke of his check for the same amount to the credit of the surplus and undivided profits funds of the bank, nor of the letters written by Clarke to the Comptroller nor of what the bank books showed. Wakeman v. Dalley, 51 N.Y. 27, 32, 10 Am.Rep. 551; Reno v. Bull, 226 N.Y. 546, 124 N.E. 144; Briggs

v. Spaulding, 141 U.S. 132, 147, 11 S.Ct. 924, 35 L.Ed. 662.

While these are cases relating to the liability of directors of a corporation generally, they have application here.

If this were an action by plaintiff against the bank as a solvent operating bank, the books and records of the bank would not be controlling. They would not in such circumstances change the liability of the bank if the bank did in fact receive the benefit of plaintiff's bonds with the knowledge of its director. See authorities cited below.

■ Turning to defendant's second ground (2) above, that President Clarke was not authorized to borrow for the bank and bind the bank in the absence of authority by the board of directors, it need only be said that authority is abundant and controlling that, if a president or other officer of a bank borrows money without authority and the bank with knowledge receives the benefit of the borrowed money the bank is bound. Pierson v. Atlantic Nat. Bank, 77 N.Y. 304; Hanover Nat. Bank v. First Nat. Bank, 109 F. 421 (C.C.A.8, 1901); Auten v. United States Nat. Bank, 174 U.S. 125, 19 S.Ct. 628, 43 L.Ed. 920; Aldrich v. Chemical Nat. Bank, 176 U.S. 618, 20 S.Ct. 498, 44 L.Ed. 611; Citizens' Central Nat. Bank v. Receiver of Cooper Exch. Bank, 216 U.S. 196, 30 S.Ct. 364, 54 L.Ed. 443, affirmed Appleton v. Citizens' Cent. Nat. Bank, 190 N.Y. 417, 83 N.E. 470, 32 L.R.A.(N.S.) 543; Rankin, Receiver, v. Emigh, 218 U.S. 27, 30 S.Ct. 672, 54 L.Ed. 915; Blanchard v. Commercial Bank of Tacoma, 75 F. 249 (C.C.A.9, 1898); Keyes v. First Nat. Bank (C.C.A.) 25 F.(2d) 684.

The same must be true if the president borrowed bonds instead of money and the bank with knowledge accepted the benefit.

The knowledge of the bank, viewing the transaction from either aspect, is clear. It increased the salary of the president twice to the amount of $750 for the purpose of paying interest to the plaintiff, and then promptly reduced the salary to the former figure.

When the bank made its report of assets and liabilities, it showed the value of these securities coming from plaintiff.

These bonds were in the bank's portfolio of securities at all times to the

knowledge of the bank's directors until sold by the receiver in 1933 and 1934. The evidence was sufficient to support the verdict against the receiver if the bank were still a going solvent bank. But the bank had become insolvent and passed to the control of the receiver, who represents the depositors and other creditors.

The serious question in the case is raised by the third ground of defendant Reasoner's motion, viz., estoppel.

Defendant contends that, since plaintiff loaned the money or the bonds to the bank to remove impairment of assets without receiving any obligation of the bank, knowing that the bank records showed no obligation to him, he is thereby estopped and cannot recover as against the depositors and creditors.

Plaintiff testified that he made the loan, whether it be money or bonds, to enable the bank to remain open. The amended complaint in paragraphs 5 and 6 alleges very specifically that plaintiff was requested and did loan the securities to the bank because the Comptroller required the sum of $25,000 to be added to the assets of the bank "in order to bolster up said assets, in default of which said bank could be closed."

The plaintiff took no obligation from the bank, and must have known that, if its assets were to be increased by his $25,000 in securities, there could be no corresponding obligation to him shown on the books of the bank. The result was to give a fictitious representation of assets to liabilities.

While, if the bank were solvent and a going concern, plaintiff might recover, he cannot recover when he has been party to a deception upon the depositors and creditors of the bank and upon the Comptroller of the Currency when the bank becomes insolvent and his securities are taken by the receiver. He is estopped from asserting his claim as against depositors and other creditors.

Best, Receiver, v. Thiel, 79 N.Y. 15, 18, is a case in close analogy. Thiel, a director of the bank, gave a mortgage of $70,000 to one Hall, and the latter at Thiel's direction assigned it to the bank to enable it to keep open and continue business. The bank failed, and, in an action by the receiver to foreclose the mortgage, Thiel, among other defenses, asserted that the mortgage was without consideration,

and therefore void. The court rejected all defenses and granted the foreclosure. The Court of Appeals said, upon the question of Thiel's liability:

"It was given expressly to make up the deficit in the assets of the bank and to enable it to go on with its business. It was reported to the banking department as a portion of the assets and was in effect represented to the depositors of the bank as a portion of the assets, and all this was done by the defendant and with his knowledge and assent. It was in consequence of this and other securities given by other trustees, that the superintendent of the banking department, acting officially for the public and all the creditors of the bank, permitted the bank to continue its business.

"It was in reliance upon this and the other securities given, that depositors were induced to make and leave deposits in the bank; and hence, upon the clearest principles of justice and morality, the defendant should be estopped from denying the validity of this mortgage."

If the mortgagor there was estopped from denying the validity of his mortgage, so the plaintiff here, who loaned his securities or his money for the like purpose of keeping open the bank of which he was director and stockholder when the obligation of the bank to him was suppressed, withheld, and concealed with his knowledge and assent, is likewise estopped from recovery against the receiver.

There are many cases where directors and stockholders, to keep banks open, gave notes and other obligations and were held liable on the notes as given for a valuable consideration and estopped from setting up as a defense lack of consideration.

Some of such cases are: Hurd, Receiver, v. Kelly, 78 N.Y. 588, 34 Am.Rep. 567; Union Bank v. Sullivan, 214 N.Y. 332, 108 N.E. 558; Dykman v. Keeney, 10 App.Div. 610, 612, 42 N.Y.S. 488; Dykman v. Keeney, 16 App.Div. 131, 45 N.Y.S. 137, affirmed 160 N.Y. 677, 54 N.E. 1090; Sickles v. Herold, 11 Misc. 583, 32 N.Y.S. 1083, affirmed Sickels v. Herold, 15 Misc. 116, 36 N.Y.S. 488.

Even when the maker of the obligation was not a stockholder or director, but gives it to the bank with intent that it should be used to improve or prevent impairment of assets, he is liable to the receiver when the bank becomes insolvent. Pauly v. O'Brien, 69 F. 460 (C.C.Cal.1895); Federal

Reserve Bank **v.** Crothers, 289 F. 777 (C. C.A.4, 1923).

In most cases the stockholder has given his obligation and not his money or security, as here. But when money was deposited by stockholders and directors in an alleged "special deposit" to prevent the closing of the bank, it was held that they could not recover the money so deposited. Fallgatter v. Citizens' Nat. Bank, 11 F. (2d) 383 (D.C.Minn.1926).

It seems unnecessary to give further citations.

It is quite true that plaintiff may not have fully realized the effect of the way in which the loan transaction was carried on. He in all probability left everything to Clarke. That, however, does not excuse him.

Nor could plaintiff recover against the bank if Clarke failed to carry out representations made to plaintiff of the manner in which the transaction would be handled. Plaintiff made Clarke his agent for the purpose of using the $25,000 to aid the bank to show unimpaired capital and to remain open. If Clarke failed to do it in the way agreed upon or which plaintiff expected, plaintiff cannot put upon the bank the duty of seeing that it was done as agreed. Federal Reserve Bank v. Crothers, 289 F. 777, 779, supra.

But the record discloses no deviation by Clarke from any agreed line of procedure in making the $25,000 money or bonds available to increase the assets of the bank to that extent without any corresponding increase of liabilities which would, of course, defeat the whole purpose.

Clearly plaintiff cannot ·recover as against the depositors and ·creditors of the bank.

What, then, is plaintiff's position? He, like other stockholders, has paid his assessment. In case of any surplus, must that surplus, which may be presumed to include all or at least part of his bonds, be distributed pro rata among all the stockholders, who in this case are probably all directors. L. J. Clarke alone owns more than a majority of the stock, viz., 415 shares.· No good reason appears why out of any surplus, if any, arising in whole or in part from plaintiff's $25,000 loan, he (Clarke), who made no loan, should receive, on his shares more than eight times as much as plaintiff would receive on his fifty shares,

Certainly plaintiff stands in a better position than the stockholders, for, although he knew the purpose for which his bonds were delivered to the bank, so did they all.

It seems inequitable that they who gave nothing to prevent impairment of capital should share more than equally with him in what he alone gave to the bank for a worthy object.

No case examined by the court touches upon this point directly.

In Sickels v. Herold, 15 Misc. 116, 119, 36 N.Y.S. 488, supra, it was held that, when the makers of notes claimed that the notes were given upon an agreement between the makers and the cashier of the bank, the notes were not to be enforceable until the deficiency of the rejected securities (to make good which the notes were given) should be ascertained, the makers were held liable absolutely and before such ascertainment, but they were held entitled upon theory of surety or subrogation to the rejected assets on payment of their notes in full. See, also, Rankin, Receiver, v. Emigh, 218 U.S. 27, 30 S.Ct. 672, 54 L. Ed. 915, supra.

Upon a like theory of subrogation or suretyship to the depositors and creditors, plaintiff should be entitled to be paid his $25,000 loan before anything can be distributed to the stockholders. Whether the creditors will be paid in full and something left for the stockholders cannot be determined by this court at this time. All that appears on record is that at the time the action was brought 69½ per cent. dividend had been paid to depositors. This phase of the matter will be academic, if the creditors are not paid in full. But the court may not assume that there will be no surplus.

The rights of all parties can probably be safeguarded by requiring the plaintiff to file as a condition to entry of judgment in his favor against the receiver a stipulation to the effect that such judgment shall be subject to all the allowed or uncontested claims against the bank and shall be payable only out of surplus remaining after payment of such depositors and other creditors. If the plaintiff makes and files such a stipulation, judgment may be entered so limiting its lien and effect.

If such stipulation is not filed within 15 days, which may be extended on application, the verdict of the jury finding for

plaintiff against the defendant Reasoner is set aside and the complaint dismissed as to him.

Decision upon plaintiff's motion to set aside the verdict of no cause of action in favor of the defendant Clarke is reserved until determination by plaintiff of whether he will stipulate or suffer dismissal as against defendant Reasoner.

Counsel may file briefs as to plaintiff's motion to set aside the verdict in favor of defendant Clarke, if they so desire.